1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANNE SABETTA, et al.

11              Plaintiffs,                No. 2:08-cv-2181 JAM KJN PS

12        v.

13   THE NATIONAL RAILROAD
     PASSENGER CORP., dba AMTRAK,
14   et al.,                               ORDER AND
                                           FINDINGS AND RECOMMENDATIONS
15              Defendants.

16
     _____/
17

18              Plaintiffs, who are proceeding without counsel, filed their complaint on

19   September 16, 2008.[1]  (Dkt. No. 1.)  Following the plaintiffs submission of the appropriate in

20   forma pauperis applications, on May 26, 2009, this court granted the plaintiffs' request to

21   proceed in forma pauperis.  (Dkt. No. 9.)  In that same order, the court reviewed the in forma

22   pauperis pro se complaint pursuant to 28 U.S.C. § 1915(e)(2), and dismissed plaintiffs'

23   complaint with leave to file an amended complaint.  On September 3, 2009, plaintiffs filed an

24   _____

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
26   February 9, 2010 (Dkt. No. 13).

                                           1

1  amended complaint.  The court now reviews the amended complaint pursuant to 28 U.S.C. §

2  1915(e)(2).

3        The court is permitted to screen complaints brought by parties proceeding in

4  forma pauperis.  See 28 U.S.C. § 1915(e)(2); see also Lopez v. Smith, 203 F.3d 1122, 1129 (9th

5  Cir. 2000).  Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss a case filed

6  pursuant to the in forma pauperis statute if, at any time, it determines that the allegation of

7  poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief

8  may be granted, or seeks monetary relief against an immune defendant.

9        Plaintiffs' amended complaint[2] arises from attempted travel on an AMTRAK

10  passenger bus from Sacramento, California to Chico, California.[3]  This complaint[4] alleges that on

11  September 16, 2006, plaintiff Sabetta purchased an AMTRAK ticket for travel by train from San

12  Jose to Sacramento, and then continuing by bus from Sacramento to Chico.  Plaintiff Sabetta was

13  attempting to visit her daughter in Chico.

14        Plaintiff Sabetta states that she is an alcoholic, that she purchased a half-bottle of

15  wine on the train portion of her trip, but that she was not intoxicated.  Plaintiff Sabetta alleges

16  that after she commenced the bus portion of her AMTRAK trip to Marysville that she "noticed

17  the bus driver smoking what looks like a cigarette butt - he takes to [sic] puffs and puts it out."

18  Plaintiff Sabetta alleges that she questioned the bus driver about the smoking policy on the bus

19  and that he responded in an angry tone.  She claims the bus driver belittled and ridiculed her, and

20  that she said in response "Why are you so mad? I don't care if you smoke, What were you

21

22      [2]  The facts as recited herein are gathered from the operative pleading, the plaintiffs' first amended complaint.

23      [3]  All cities referenced herein are located in California unless otherwise stated.

24      [4]  As plaintiffs were specifically cautioned in this court's May 26, 2009 order, "the court
25  cannot refer to prior pleadings in order to make an amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself. . . . Therefore a plaintiff waives all
26  causes of action alleged in the original complaint which are not alleged in the amended complaint."  (Dkt. No. 9 at 8.)

1   smoking a Joint (Marihuana Cigarette)?"  Plaintiff Sabetta states that a woman from the back of

2   the bus walked up and suggested that she leave the bus driver alone, and that Sabetta then moved

3   five rows back and fell asleep.  Plaintiff Sabetta contends that when the bus arrived at

4   Marysville, she was sleeping, during which time defendant Squire, the AMTRAK bus driver,

5   called the Marysville police department to complain that he had an unruly passenger on his bus,

6   plaintiff Sabetta.

7           Two officers from the Marysville Police Department arrived at the scene, and

8   after speaking with Sabetta, arrested her for public intoxication pursuant to California Penal

9   Code section 647(f).  As stated in the police report attached to plaintiffs' complaint, defendant

10  Conde, a Marysville police officer, stated that plaintiff was "angry and uncooperative," "smelled

11  strongly of alcoholic beverages," "slurred her words," and "would not answer questions and

12  repeated [sic] yelled that she just wanted to go to Chico."  Defendant Conde stated in his police

13  report that defendant Squire was unwilling to let plaintiff Sabetta continue on the bus, and that

14  when Sabetta exited the bus, she could barely stand, that she staggered, became angry and

15  required restraint by several deputies during intake at the jail.

16          Plaintiff Sabetta alleges that she was not allowed to call her daughter, plaintiff

17  Walker, right away, to let her know that she would not be arriving via AMTRAK as scheduled.

18  It was eventually decided that plaintiff Walker would pick up plaintiff Sabetta from the Yuba

19  County jail the next morning, but Walker was unable to do so because of a family emergency.

20          Plaintiff Sabetta alleges that, upon her release, the Yuba County corrections

21  officers did not help her look up the Greyhound bus schedule (presumably to Chico) and did not

22  "care that $15.00 maximum cash the County Jail release inmates with, will not punches [sic] a

23  Greyhound Bus ticket to Chico."  Plaintiff Wichelman contends that the Yuba County Sheriff's

24  department acted with "deliberate indifference to Sabetta's Health and Safety when released."

25          Plaintiff Sabetta contends that she was released from custody the next morning,

26  began walking around, purchased a beer, started looking for a phone and became lost.  Plaintiff

3

1   Sabetta then alleges that she was kidnaped by a man, not named as a defendant in this action, at a

2   makeshift campground, and that this man punched and beat her numerous times and kept her

3   against her will for a week.

4          Plaintiff Sabetta then asserts that the Marysville Police Department mishandled

5   her kidnaping investigation and failed to consider the appropriate suspects.  Plaintiffs allege that

6   the San Jose Police Department, who is not named as a defendant in this action, searched

7   plaintiff Wichelman's home and car for retaliatory and intimidation purposes.  Plaintiffs allege

8   that Sabetta was eventually located by a private investigator hired by plaintiff Wichelman, and

9   that Sabetta was taken to a Marysville hospital.[5]

10          Plaintiffs allege the following "causes of action," which the court characterizes as

11   follows solely for the purpose of screening the complaint: (1) violation of civil rights pursuant to

12   42 U.S.C. § 1983; (2) violation of civil rights pursuant to 18 U.S.C. § 245; (3) false arrest;

13   (4) false imprisonment; (5) deliberate indifference to the health and safety of a person in custody;

14   (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.

15   Plaintiffs also contend that AMTRAK's "Official Stated Policy" regarding its terms of

16   transportation are "too broad, discriminatory and poorly defined and without remedies to protect

17   the passengers."  Specifically, plaintiffs argue that AMTRAK's policy fails to treat all passengers

18   equally because "[m]any passengers do become intoxicated while onboard Amtrak Train - the

19   consumption of alcohol is encouraged by Defendant AMTRAK [and] does not erode/diminish a

20   persons [sic] of Constitutional Rights."  Plaintiffs also contend that passengers should receive

21   due process before "any alighting is inflicted upon said passengers."  Citing California state law,

22   plaintiffs also allege that common carriers have a duty to protect paying passengers from harm

23

24          [5]  Plaintiffs also allege that nine months later plaintiff Sabetta took another AMTRAK
     train and bus from San Jose to Marysville to meet with "Theresa" from the "Victim Witness
25   Program."  Sabetta states that she was placed under house arrest at the Red Court Inn in
     Marysville by the Marysville Police Department and that the Marysville Police Department was
26   uncooperative in helping solve her kidnaping case.

1  and to ensure that they are conveyed to their destinations in a proper manner.

2  Plaintiffs' Claim Under 18 U.S.C. § 245

3        Plaintiffs allege a claim for relief pursuant to 18 U.S.C. § 245(b) and (e).  Yet it is

4  well established that this federal criminal statute which permits federal prosecutions for

5  interference with federally protected rights does not confer a private right of action for damages.

6  See Cooley v. Keisling, 45 F. Supp. 2d 818 (D. Or. 1999); John's Insulation, Inc. v. Sisak Constr.

7  Co., 774 F. Supp. 156, 163 (S.D.N.Y. 1991).  Section 245 expressly reserves the right of

8  prosecution to government officials.  18 U.S.C. § 245(a)(1).  Because plaintiff cannot amend the

9  complaint to assert a valid claim for relief under this section, it is recommended that such claim

10  be dismissed with prejudice.

11  Plaintiffs Karl Wichelman and Bridgette Walker

12        Plaintiffs allege that plaintiff Wichelman is the common law husband of Sabetta

13  and that plaintiff Walker is the daughter of Sabetta.  In the first amended complaint, plaintiffs

14  make scant reference to any claims that Wichelman or Walker might possess.  This court

15  previously held that the legal basis for plaintiff Wichelman's claims was vague, and that plaintiff

16  Walker had alleged no claims at all.  (Dkt. No. 9 at 6-7.)  Nothing in plaintiffs' first amended

17  complaint cures these deficiencies.  Plaintiff Walker has alleged no claims, and the gravamen of

18  plaintiff Wichelman's injury is still that Sabetta was treated unfairly.  These plaintiffs have no

19  standing to raise the claims of co-plaintiff Sabetta.  Nat'l Wildlife Fed'n v. Adams, 629 F.2d 587,

20  593 n.11 (9th Cir. 1980) ("[T]he standing question is whether the plaintiff has 'alleged such a

21  personal stake in the outcome of the controversy' as to warrant his invocation of federal-court

22  jurisdiction and to justify the exercise of the court's remedial power on his behalf.").  Plaintiffs

23  already amended their complaint after the grant of a sixty day extension of time, and further

24  ////

25  ////

26  ////

1    amendment as to these two plaintiffs appears futile.[6] (Dkt. No. 10.) See Conley v. Gibson, 355

2    U.S. 41, 47 (1957); Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995)

3    (holding that an amended complaint with vague and scanty allegations fails to satisfy the notice

4    requirement of Rule 8). Hence, it is recommended that plaintiffs Wichelman and Walker be

5    dismissed from this action with prejudice.

6    Remainder of Amended Complaint

7                The court cannot conclusively determine on the present record that plaintiff

8    Sabetta fails to state a claim on which relief may be granted with respect to the remaining claims

9    alleged. As to the remaining six claims by plaintiff Sabetta, the court reserves decision on these

10   claims until the record is sufficiently developed.[7] Accordingly, the court will order service of the

11   complaint on the defendants, but will do so by separate order after resolution by the United States

12   District Judge assigned to this case of the undersigned's recommendation below that plaintiffs'

13   section 245 claim be dismissed with prejudice and that plaintiffs Wichelman and Walker be

14   dismissed from this action.

15   Plaintiffs' Request for Counsel

16               Plaintiffs also state within their first amended complaint that they would like court

17   appointed counsel to represent them because "[t]his case involved multiple agency [and] is of a

18   complex nature beyond the abilities of plaintiffs." An expenditure of public funds on behalf of

19   an indigent litigant is proper only when authorized by Congress. Tedder v. Odel, 890 F.2d 210,

20   211-12 (9th Cir. 1989). According to the Ninth Circuit, Wilborn v. Excalderon, 789 F.2d 1328,

21   1331 (9th Cir. 1986), the court may appoint counsel only under exceptional circumstances, which

22

23          [6] It is further noted that plaintiff Walker did not even sign the amended complaint.
Pursuant to Rule 11 of the Federal Rules of Civil Procedure, every pleading "must be signed by
at least one attorney . . . or by a party personally if the party is unrepresented."

24

25          [7] This court may later consider, among other things, whether venue is proper in this court
in light of the complaint's referenced District of Columbia forum selection clause, whether the
statute of limitations precludes certain claims and whether certain defendants are entitled to

26   immunity.

1    includes a finding that a petitioner is unable to articulate his or her claims without the benefit of

2    counsel in light of the complexity of the legal issues involved.  The court finds that plaintiffs

3    have not met the showing of extraordinary circumstances required to support such relief.

4    Plaintiffs, despite their pro se status, have adequately articulated their positions with this court on

5    numerous occasions.  Appointment of counsel is presently inappropriate based on the facts

6    presented to this court.

7    <u>Plaintiffs' Request for "Forwarding" of the Complaint</u>

8          Finally, plaintiffs request that "copies of this complaint be forwarded to a United

9    States District Attorney to investigate crimes committed against Anne Sabetta and Chairo

10    Garibay." (Dkt. No. 12 at 1.)  The court's role is to decide cases before it, and it will not forward

11    copies of plaintiffs' complaint to the requested third parties.  Plaintiffs, and not the court, must be

12    responsible for distributing their complaint, or not, as permitted by law.  <u>See</u> <u>U.S. v. Gonzales</u>,

13    578 F.3d 1130, 1132 (9th Cir. 2009) (recognizing the court's role as an adjudicative body

14    charged with deciding cases).

15    <u>CONCLUSION</u>

16          For the foregoing reasons, IT IS HEREBY ORDERED that:

17          1.     Service of the amended complaint will be ordered by separate order once

18    the United States District Judge assigned to this case has acted upon the recommendation stated

19    below; and

20          2.     Plaintiffs request for counsel is DENIED; and

21          3.     Plaintiffs' request that copies of the complaint be forwarded to a "United

22               States District Attorney" is DENIED.

23          It is FURTHER RECOMMENDED that:

24          1.     Plaintiffs' claims for relief under 18 U.S.C. §§ 245(b) and 245(e) be

25               dismissed with prejudice; and

26    ////

2.    Defendants Wichelman and Walker be dismissed from this action with

prejudice.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order.  Turner v.

Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir.

1991).

DATED:  April 21, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

8